<br/>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

    KATON, INC.,                                           CASE NO. 08-02266-NPO

    DEBTOR.                                                   CHAPTER 11

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION OF THE BILCO COMPANY TO CONVERT OR DISMISS CHAPTER 11**
**CASE AND CONVERTING CHAPTER 11 CASE TO CHAPTER 7 CASE**

On February 24, 2009, there came on for hearing (the "Hearing") the Motion of The Bilco Company to Convert or Dismiss Chapter 11 Case (the "Conversion Motion") (Dkt. #103) filed by The Bilco Company ("Bilco") and the Answer and Response to Motion of The Bilco Company to Convert or Dismiss Chapter 11 Case (the "Answer to Conversion Motion") (Dkt. #114) filed by Katon, Inc.[1] (the "Debtor") in the above-styled chapter 11 case. At the Hearing, Jeffrey R. Blackwood and James W. Brewer represented Bilco, and Craig M. Geno represented the Debtor. The Court, having considered the pleadings, the evidence admitted at the Hearing, and the arguments of counsel, finds that the Conversion Motion is well taken and should be granted. The chapter 11 case should be converted to a chapter 7 case for the reasons discussed below:[2]

**Jurisdiction**

This Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant

---

[1] The voluntary petition (Dkt. #1) filed by Katon, Inc. in this bankruptcy proceeding reflects the name of the Debtor as Katon, Inc., f/k/a Klingler Electric Corporation.

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

to 28 U.S.C. § 1334.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Notice of the Conversion Motion was proper under the circumstances.

### Facts[3]

1.      In 1993, Bilco, Klingler Electric Corporation ("KEC"), and Klingler International Technologies, S.A. de C.V. a/k/a KIT de Mexico S.A. de C.V. ("KIT") entered into a collection of agreements (the "1993 Agreements") related to the assembly, packaging, and warehousing of Bilco's products at KEC's and KIT's facilities in Juarez, Mexico, and El Paso, Texas.  (Motion of The Bilco Company for Relief from the Automatic Stay to Complete Arbitration (the "Arbitration Motion") (Dkt. #30, ¶ 2, Ex. 1)).  As part of the 1993 Agreements, KEC and KIT purportedly agreed, among other things, to use Bilco's equipment to weld, assemble, and package Bilco's products at KIT's manufacturing facilities and to comply fully with all federal, state, and municipal laws and rules, and regulations of the United States and Mexico, including compliance with all applicable labor, tax, customs, environmental, and immigration laws.  (Arbitration Mot., Ex. 1).  Two of the agreements comprising the 1993 Agreements contain arbitration provisions requiring Texas law to apply to any dispute between the parties.  (Arbitration Mot., ¶ 2).

2.      On or about December 28, 2004, KEC allegedly was administratively dissolved by the Mississippi Secretary of State.  (Arbitration Mot., Ex. 1).  Thereafter, Bilco purportedly gave written notice to KEC that one of the agreements contained in the 1993 Agreements would be terminated for cause and requested that its equipment be returned.  (Arbitration Mot., Ex. 1).

---

[3] The facts set forth below are taken in part from this Court's Memorandum Opinion and Order Granting Motion of The Bilco Company for Relief from Automatic Stay to Complete Arbitration ("Opinion on Arbitration Motion") (Dkt. #73).

3.  On October 3, 2007, Bilco filed in the 243rd Judicial District Court for El Paso County, Texas, an action asserting breach of contract claims against KEC, KIT, Anton Klingler II, ("Klingler"), and Anton K. Klinger, III ("Klingler III") alleging that they had failed to make various tax payments, failed to file various tax returns, failed to deliver Bilco's equipment as requested, and failed to comply with Mexican federal labor and customs laws (the "State Court Action").  In the State Court Action Bilco alleges that "KEC's corporate charter was administratively dissolved in 2004 and [that, consequently,] Klingler and Klingler III personally assumed the performance of, and liability for, the 1993 Agreements."  (Arbitration Mot., Ex. 1).  Bilco further asserts in the State Court Action that "KEC and KIT are alter egos of Klingler and Klingler III."  (Arbitration Mot., Ex. 1).  Bilco seeks money damages and attorney's fees in the State Court Action.  (Arbitration Mot., Ex. 1).

4.  On March 26, 2008, the parties to the State Court Action executed an arbitration agreement, separate and apart from those contained in the 1993 Agreements, whereby they agreed to private arbitration of the State Court Action (the "Arbitration Agreement").  (Arbitration Mot., ¶ 3).

5.  On March 26, 2008, the appointed arbitrator entered a Report of Preliminary Hearing and Scheduling Order.  The Scheduling Order was amended on July 29, 2008.  As amended, the Scheduling Order provided various dates and deadlines which govern the arbitration and scheduled a hearing to commence on September 22, 2008.  (Arbitration Mot., ¶ 4).

6.  On August 1, 2008, the Debtor, which, as noted, was formerly known as KEC, filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  (Dkt. #1).

7.　　On August 8, 2008, the Debtor removed the State Court Action to the United States Bankruptcy Court for the Western District of Texas, then filed a Motion to Transfer Venue of the removed action to this Court. Bilco opposed the Motion to Transfer Venue and filed a Motion to Remand in the Texas bankruptcy court, seeking to return the State Court Action to the 243rd Judicial Court for El Paso County, Texas. (Arbitration Mot., ¶ 6).

8.　　On August 28, 2008, Bilco filed the Arbitration Motion seeking relief from the automatic stay[4] in order to complete the ongoing arbitration of the State Court Action and to allow the arbitrator to adjudicate Bilco's breach of contract and alter ego claims.[5] Bilco maintained the claims asserted in the State Court Action are non-core matters and that, as such, this Court was required to grant relief from the stay to allow the parties to complete the arbitration.

9.　　The Debtor subsequently filed its Answer and Response to the Motion for Relief from the Automatic Stay to Complete Arbitration (the "Answer to Arbitration Motion") (Dkt. #50), contending that "[c]ertain features of Bilco's claims are core proceedings," (Answer to Arbitration Mot., ¶ 11), and that judicial economy and the efficient administration of the bankruptcy case weigh in favor of denying the Arbitration Motion (Answer to Arbitration Mot., p. 3).

10.　　On November 13, 2008, this Court entered the Opinion on Arbitration Motion and the Final Judgment Granting Motion of The Bilco Company for Relief from the Automatic Stay to Complete Arbitration (Dkt. #72).

---

[4] The automatic stay arises in the Debtor's bankruptcy case pursuant to 11 U.S.C. § 362.

[5] In the Arbitration Motion, Bilco states that it will pursue any collection efforts against the Debtor in this Court. (Arbitration Mot., ¶ 7).

11.     On November 24, 2008, the Debtor filed its Motion to Alter or Amend Order of November 13, 2008 (the "Motion to Amend") (Dkt. #80). On December 23, 2008, Bilco filed its Response of The Bilco Company to Debtor's Motion to Alter or Amend Order of November 13, 2008 (Dkt. #89). This Court entered its Order (Dkt. #93) denying the Motion to Amend on January 9, 2009.

12.     On January 29, 2009, Bilco filed the Conversion Motion. On February 20, 2009, the Debtor filed the Answer to Conversion Motion.

## Discussion

According to <u>Collier on Bankruptcy</u>, amendments to 11 U.S.C. § 1112(b)[6] contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, "materially circumscribe[] the court's discretion to convert or dismiss a chapter 11 case for cause in significant ways." 7 <u>Collier on Bankruptcy</u>, § 1112.01[2][a] (Matthew Bender 15th Ed. Rev. 2005). Section 1112(b)(1) provides that the court:

> must convert or dismiss the case if the movant establishes cause unless the court determines that unusual circumstances exists establishing that conversion or dismissal would not be in the best interests of creditors and the estate. Further, the court must convert or dismiss the case if the movant establishes cause unless the provisions of section 1104(a)(3) apply. Section 1104(a)(3) provides that, rather than converting or dismissing the case, the court may appoint a chapter 11 trustee if doing so would be in the best interests of creditors and the estate. In addition, the court must convert or dismiss the case for cause shown unless the provisions of section 1112(b)(2) apply.

<u>Collier on Bankruptcy</u> further points out that § 1112(b)(2) provides that, absent unusual circumstances, the court may not convert or dismiss the case if certain criteria are satisfied:

---

[6] Hereinafter all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

  (1)  There is a reasonable likelihood that a plan will be confirmed within the timeframes specified in the subsection;

  (2)  The grounds for converting or dismissing the case include an act or omission by the debtor other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and

  (3)  There exists a reasonable justification for the act or omission demonstrating cause to dismiss the case and the act or omission will be cured within a reasonable time fixed by the court.

Id.  In the Conversion Motion, Bilco cites as "cause"[7] under § 1112 (b)(4)(A) for converting or dismissing the Debtor's chapter 11 case the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." (Conversion Mot., ¶ 5 (a)).  As an additional ground, Bilco claims that the Debtor is attempting to "use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute," and in support thereof cites In re Starmark Clinics, LP, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008).

  a)  **Section 1112(b)(4)(A).**

    **(i) Substantial or Continuing Loss or Diminution to the Estate.**

It appears undisputed that the first prong of § 1112(b)(4)(A) can be satisfied by Bilco.  The Debtor's Monthly Operating Reports indicate a net loss in each month since the case was filed.  Postpetition liabilities have grown to approximately $150,000.  While the Debtor is operating its business, "continuing as an ongoing concern in Chapter 11 is not feasible." (Mot. to Sell (described *infra*), ¶ 8).  Apparently, working capital is being provided by Klinger from his personal credit cards

---

[7] Section 1112 does not define the term "cause" but merely provides a non-exhaustive list. 7 Collier on Bankruptcy, §1112.01[2][a]; *see also* Little Creek Dev. Co. v. Commonwealth Mortgage Corp., 779 F.2d 1068, 1072 (5th Cir. 1998) (citing In re Victory Constr., 9 B.R. 549, 560 (Bankr. C.D. Cal. 1981) (noting cause is defined as "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process")).

and other personal assets.[8] Klinger and Klinger III, who own the Debtor's facilities, have not been paid any postpetition rent by the Debtor which is not included in the postpetition liabilities. Administrative insolvency is apparent.

### (ii) Absence of a Reasonable Likelihood of Rehabilitation.

The Debtor has essentially admitted the second prong of § 1112(b)(4)(A), the "absence of a reasonable likelihood of rehabilitation." That standard "is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." 7 Collier on Bankruptcy, § 1112.04[5][a][ii]. In making such a determination, the Court "should determine not only whether the causes of the debtor's continuing losses can be corrected, but also whether the debtor or some other party in interest is capable of performing the necessary remediation." Id. "In almost every case, the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." Id.

In its Motion to Sell Substantially All of the Assets of the Debtor-In-Possession, Free and Clear of Liens, Claims and Interests, With Proceeds of Sale Attaching to Liens, Outside the Ordinary Course of Business (the "Motion to Sell") (Dkt. #91) filed on January 12, 2009, the Debtor attempts to support its decision to sell substantially all of the assets to Klingler by stating the following:

> The Debtor has made the business judgment decision that continuing as an ongoing concern in Chapter 11 is not feasible due to, among other things, the costs and fees associated with the Pre-Petition Litigation, and remaining in a Chapter 11 will only result in increased costs, delays and uncertainty that will, in the end,

---

[8] The number of questionable transactions between the Debtor and its insiders is of great concern to the Court. For example, while the Debtor is severely lacking any working capital, Klingler Security has failed to pay its receivables to the Debtor in the amount of $57,994.01. Klingler Security is owned by Klingler III.

> provide little, if any, benefit to anyone other than the professionals employed by the Debtor. The Debtor's projections indicate that the Debtor could, at best, merely "tread water" absent a sale of assets, infusion of equity or a complete revamping of its current finances. It does not appear feasible for the Debtor to incur any significant refinancing (simply because of the lack of interest of any lender therein), and there is no available infusion of equity in existence. While the Debtor believes that its "core" business is viable, that core business could not yield significant profits, in the short term, to justify the continuing expense and uncertainty involved with a Chapter 11 debtor-in-possession scenario, and, if the debtor-in-possession remained as such, the profits that could be squeezed from the debtor-in-possession, for the benefit of unsecured creditors, would be nominal, at best. Therefore, the Debtor has made the decision to sell, convey and transfer substantially all of its assets to Anton K. Klinger, II or his assignee (the "Purchaser"). The Purchaser is an insider of the Debtor.

(Mot. to Sell, ¶ 8).[9]

The arguments and evidence at the Hearing on the Conversion Motion were consistent with the statements contained in the Motion to Sell. Almost seven months into this chapter 11 case, the Debtor has not filed a disclosure statement and plan, does not appear able to formulate a plan, and essentially concedes that its business prospects do not justify continuance of the reorganization effort.

### b) Gaining an Unfair Advantage.

As a separate justification for conversion or dismissal, Bilco claims that cause exists as a result of the Debtor's "attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute." (Conversion Mot., ¶ 5(b)). The facts support Bilco's assertion.

---

[9] Objections were filed to the Motion to Sell by the Mississippi State Tax Commission (Dkt. #99), Bilco (Dkt. #102), and the United States Trustee (Dkt. #105). At the Hearing, the Debtor admitted that the Motion to Sell was inadequate in that the Debtor failed to disclose the full amount of the consideration to be paid for the assets. Additionally, the Debtor claimed that the schedules of assets (Dkt. #42) grossly overvalued the assets to be sold by the Debtor. Finally, the Debtor admitted that it had obtained no appraisals, had conducted no inventories, and had failed to market the assets to any third party, non-insider prior to the Hearing. Accordingly, the Court denied the Debtor's Motion to Sell.

First, the chapter 11 case is the forum for essentially a two party dispute. Once the insider claims are eliminated, the creditors in this case as set for in the schedules are:

> 1) one secured creditor with various claims totaling $151,807.75;
>
> 2) four tax claims totaling $9,959.03;
>
> 3) three unsecured claims totaling $702.06; and
>
> 4) two contingent, unliquidated and disputed claims - Bilco for $680,000 and Titan Industrial for $260,000.

Clearly, Bilco holds the largest non-insider claim in this case. Furthermore, the arbitration proceedings between Bilco, on the one hand, and the Debtor and its insiders, on the other hand, appear to have been the precipitating cause for the filing of this chapter 11 case. (*See* Paragraphs 1 to 11 herein). The actions by the Debtor to use the automatic stay to stall the arbitration proceedings were more of a litigation tactic than a part of a legitimate effort to reorganize under chapter 11. As a result, cause exists for converting this case to a chapter 7 based on the Debtor's attempt to gain an "unfair advantage" in a "two party dispute." Starmark Clinics, LP, 388 B.R.at 736.

In defense of the Conversion Motion, the Debtor pleads for more time. The Debtor would like to sell its assets to an insider or a third party and save approximately 40 jobs of its employees, finish a project for Millsaps College, and pay its postpetition liabilities. From the testimony of Klinger and Klinger III at the Hearing, these insiders appeared to be more motivated to minimize their individual liabilities arising from their guarantees than to promote any reasonable business purpose of the Debtor. The risks of greater postpetition liabilities and the ill conceived Motion to Sell strongly suggest that conversion is the only viable solution.

**Conclusion**

Based on the foregoing, the Court concludes that the Conversion Motion should be granted, and that the case should be converted from a chapter 11 case to a chapter 7 case.

A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

IT IS, THEREFORE, ORDERED that the Conversion Motion is granted as set forth herein.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: March 6, 2009